IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JONATHAN DUNCAN, )
)
Plaintiff, )
)
v. ) 1:12CV793
)
LEWIS O. SMITH, et al., )
)
Defendants. )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, a prisoner of the State of North Carolina, seeks injunctive relief and monetary damages pursuant to 42 U.S.C. § 1983 for alleged federal constitutional violations related to medical care while in custody. (*See* Docket Entry 2.) Defendants have filed motions to dismiss for failure to state a claim. (*See* Docket Entries 14, 17.) For the reasons that follow, Defendants' motions to dismiss should be granted.

I. **BACKGROUND**

Plaintiff filed the instant complaint in this court on June 27, 2012. (Docket Entry 1.) Named as Defendants are Lewis O. Smith, Administrator of Albemarle Correctional Institution ("ACI"); Billy Martin, nurse supervisor at ACI; Martin Deaton, Sergeant/supervisor at ACI; Robert C. Lewis, Director of Prisons; and Dr. Sami Hassan, physician at ACI. On September 7, 2012, Plaintiff filed an amended complaint. (Docket Entry 8.) Defendants Smith, Martin, Deaton and Lewis (collectively, "DOC Defendants") filed their motion to dismiss on December 27, 2012 (Docket Entry 14) and Defendant Hassan filed a separate motion to dismiss on January 3, 2013 (Docket Entry 17).

## II. DISCUSSION

### A. Standard of Review

Defendants argue that dismissal is appropriate pursuant to Federal Rule of Civil Procedure 12(b)(6). A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (1999). A complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" must be dismissed. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct." *Id.*; *see also Simmons v. United Mortg. and Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011) ("On a Rule 12(b)(6) motion, a complaint must be dismissed if it does not allege enough facts to state a claim to relief that is plausible on its face.") (citations and quotations omitted). The "court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, and bare assertions devoid of factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). In other words, the standard requires a plaintiff to articulate facts, that, when accepted as true, demonstrate the plaintiff has stated a claim that makes it plausible he is entitled to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678, and *Twombly*, 550 U.S. at 557).

2

*Pro se* complaints are to be liberally construed in assessing sufficiency under the Federal Rules of Civil Procedure. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, even under this liberal construction, "generosity is not fantasy," and the court is not expected to plead a plaintiff's claim for him. *Bender v. Suburban Hosp., Inc.*, 159 F.3d 186, 192 (4th Cir. 1998).

### B. Deliberate Indifference

In *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court held that the Eighth Amendment to the Constitution "imposes duties on [prison] officials who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." *Id.* at 832 (internal quotation and citation omitted). A successful Eighth Amendment claim contains two elements: the deprivation must be, objectively, "sufficiently serious," and the prison official must have demonstrated a "deliberate indifference to inmate health or safety." *Id.* at 834.

"Deliberate indifference is a very high standard–a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999). Rather, the "deliberate indifference" prong requires Plaintiff to make "two showings:"

> First, the evidence must show that the official in question subjectively recognized a substantial risk of harm. It is not enough that the officers *should have* recognized it; they actually must have perceived the risk. Second, the evidence must show that the official in question subjectively recognized that his actions were inappropriate in light of that risk. As with the subjective awareness element, it is not enough that the official *should have* recognized that his action were inappropriate; the official actually *must have* recognized that his actions were insufficient.

3

*Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (internal citations and quotation marks omitted) (emphasis in original). "The subjective component therefore sets a particularly high bar to recovery." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). "'Deliberate indifference entails something more than mere negligence. . . .'" *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (quoting *Farmer* 511 U.S. at 835). "It requires that a prison official know of and disregard the objectively serious condition, medical need, or risk of harm." *Id.* To constitute deliberate indifference, "the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990).[1] Thus, "mere negligence or malpractice" does not constitute deliberate indifference. *Id.* at 852. Similarly, "[d]isagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985). It is well settled, therefore, that a medical need serious enough to give rise to a constitutional claim involves a condition that places the inmate at a substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment perpetuates severe pain. *Farmer*, 511 U.S. at 832-35.

## C. Allegations in Plaintiff's Complaint

The complaint alleges the following pertinent facts:

On June 11, 2011, Plaintiff, while incarcerated at Piedmont Correctional Institution ("PCI"), was assigned to a bottom bunk by the PCI medical staff because of "trauma sustain[ed] to his left knee." (Am. Compl. at 4, Docket Entry 8.) On or around September

---

[1] *Miltier* has been overruled by *Farmer* to the extent that it allowed a finding of deliberate indifference upon constructive knowledge, but it is still good law for the proposition cited.

4

21, 2011, Plaintiff was transferred to ACI. (*Id.*) Plaintiff alleges that he was denied the opportunity to be screened by medical personnel during intake but that he was screened on or around September 28, 2011, by "non-qualified custodial staff members under threat, duress and coercion." (*Id.*) According to Plaintiff, from September 2011 until February 2012 he received physical therapy at ACI for his knee issues. (*Id.* at 10.) On December 15, 2011, Plaintiff was assigned to a bottom bunk by medical staff at ACI, but he alleges that in February 2012 he was moved from a bottom bunk to a top bunk assignment by Defendant Deaton. Plaintiff alleges that on February 21, 2012, he fell from the top bunk "whereby he suffered/aggravated excruciating pain until this day." (*Id.* at 8.) Plaintiff submitted an "emergency sick call" following his fall but he was not seen by Defendant Hassan until March 1, 2012, at which time Dr. Hassan "determined that Plaintiff was not ok and subsequently extended his restrictions." (*Id.*)

Plaintiff alleges that these actions of the DOC Defendants and Dr. Hassan amounted to deliberate indifference to Plaintiff's medical needs and violated his constitutional right to be free of cruel and unusual punishment. Plaintiff seeks declaratory relief recognizing a violation of his Eighth Amendment rights, injunctive relief to be seen by a knee specialist, and both compensatory and punitive damages from each defendant, both in their individual and official capacities. (*Id.* at 13.) Specifically, Plaintiff appears to assert that Defendants were deliberately indifferent to his medical needs and thus violated Plaintiff's constitutional rights in the following separate respects: (1) failing to provide adequate and qualified staff to provide medical screening on intake (Am. Compl. ¶¶ 22, 25); (2) failing to maintain accurate medical records (*Id.* ¶26); and (3) failing to adequately treat his medical needs. (*Id.* ¶ 40.)

5

### D. Analysis

#### 1. Failure to State a Claim

*Defendant Hassan*

As pointed out by Defendant Hassan, the essence of Plaintiff's amended complaint against Dr. Hassan is that Plaintiff's medical condition, for which he concedes he received medical attention, was not attended to in the manner in which Plaintiff believes was necessary. There is quite simply nothing in the complaint which shows that Dr. Hassan's conduct amounted to deliberate indifference to a serious medical need. In fact, Plaintiff alleges that Dr. Hassan examined him on March 1, 2012, and "determined that Plaintiff was not ok and subsequently extended his restrictions." (Am. Compl. at 4, Docket Entry 8.) Plaintiff also alleges that Defendant Hassan ordered an MRI of Plaintiff's knee, though Plaintiff alleges that Dr. Hassan was deliberately indifferent towards "his plight" by not scheduling the MRI sooner. (*Id.* at 11.) Dr. Hassan clearly provided Plaintiff with medical treatment on numerous occasions. The fact that Plaintiff disagrees with the treatment or medical judgment of Dr. Hassan, or believes it was not done quickly enough, is not sufficient to state a claim of deliberate indifference. *See Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976); *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998). The allegations in the amended complaint are insufficient to show that Dr. Hassan ignored any serious medical needs of Plaintiff. Thus, under the standards of *Iqbal* and *Twombly*, Plaintiff's complaint as to Dr. Hassan does not "contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face." *Iqbal*, 556 U.S. at 678.

*DOC Defendants*

As noted above, Plaintiff's claims rest on three different allegations. First, Plaintiff alleges inadequate medical screening upon his transfer to ACI. Plaintiff admits that he was screened, but alleges that the screening was conducted by "non-qualified custodial staff members under threat, duress and coercion." (Am. Compl. at 4.) Plaintiff does not allege any details about the screening, nor does he allege how the staff members were unqualified, how he was threatened or coerced, or how the alleged constitutional violations led to further injury or a serious risk of harm to him. These conclusory allegations, therefore, are not sufficient to state a claim against the DOC Defendants.

Plaintiff also alleges that his move to a top bunk on February 20, 2012, followed by his fall on February 21, 2012, amounted to deliberate indifference (and thus cruel and unusual punishment) on the part of the DOC Defendants. Again, Plaintiff has not alleged that the DOC Defendants committed any acts which rose to a level of extreme deprivation or wanton infliction of pain, much less that the DOC Defendants disregarded a known risk that Plaintiff would fall out of his top bunk. In fact, according to Plaintiff's own allegations, his physical therapy treatment was coming to an end at about the same time, so it does not appear that it was unreasonable to move him to a top bunk at that time. Plaintiff has not alleged that the DOC Defendants "acted with a sufficiently culpable state of mind and . . . [that] the deprivation suffered or injury inflicted on the inmate was sufficiently serious." *Iko*, 535 F.3d at 938. At best, Plaintiff alleges an ordinary lack of due care for Plaintiff's safety, which does not constitute cruel and unusual punishment. *See Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991) ("To be cruel and unusual punishment, conduct that does not purport to be

7

punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety.").

Finally, in his last allegation, Plaintiff appears to be complaining, in a conclusory fashion, about what he perceives to be a delay in response to his sick-call requests. (Am. Compl. at 4.) Plaintiff does not allege that he was denied medical care, and in fact the allegations of the amended complaint demonstrate that Plaintiff was seen by Dr. Hassan and was being treated for his knee issues. "For an allegation of inadequate medical care to support an Eighth Amendment claim, there must be 'neglect of serious medical needs.'" *Williams v. Branker*, 462 Fed. App'x 348, 353 (4th Cir. 2012) (quoting *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996)). Even assuming that Plaintiff's knee issues created a serious medical need, "his allegations regarding his medical treatment do not rise to the level of neglect." *Id.* Again, Plaintiff's allegations with regard to what he perceived to be a delay in his medical treatment fail to provide factual support for the claim that DOC Defendants treated his medical needs with deliberate indifference.

### 2. Supervisory Liability

The DOC Defendants allege that Plaintiff failed to state a claim for supervisory liability against them. As correctly noted by the DOC Defendants, they may not be held liable based upon a theory of *respondeat superior*, because *respondeat superior* generally is inapplicable to § 1983 suits. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978). However, a supervisor may be liable for the actions of a subordinate if: "(1) the supervisory defendants failed promptly to provide an inmate with needed medical care; (2) [] the supervisory defendants deliberately interfered with the prison doctors' performance; or

8

(3) [] the supervisory defendants tacitly authorized or were indifferent to the prison physicians' constitutional violations." *Miltier*, 896 F.2d at 854 (internal citations omitted). Supervisory liability is not established merely by demonstrating that a subordinate was deliberately indifferent to a plaintiff's medical needs. *Id.* Furthermore, in medical care claims, supervisory officials may rely upon the judgment of the medical staff to determine the course of treatment. *See id.*

With regard to his supervisory liability claims against the DOC Defendants, Plaintiff relies upon conclusory allegations to support his alleged Eighth Amendment violations. Plaintiff alleges that Defendant Lewis, as Director of Prisons, has the "overall responsibility" regarding Plaintiff's claims and "had full and complete knowledge of [Plaintiff's] plight." (Am. Compl. at 7-9, ¶¶ 11-17.) Plaintiff concedes, however, that, as to Defendant Lewis, the actions Plaintiff complains of were in actuality the result of a subordinate's actions. (*Id.* at 8, ¶¶ 15-16.) As for Defendant Smith, the Facility Administrator, Plaintiff alleges that he "is overall responsible" for the hiring of facility physicians and other staff and maintaining "policies and procedures that interfere with adequate medical care and has failed to remedy unlawful conditions here at (ACI) in which he knows about." (*Id.* at 9, ¶¶ 18-22.) As to Defendant Martin, Plaintiff alleges he is the "Supervisor of Nursing Staff" and as such is responsible for failing "to have [Plaintiff] medically screened by qualified nursing staff/medical staff," and to maintain accurate medical records and "is responsible for the overall answer to such medical complaints." (*Id.* at 10, ¶¶ 25-27.) The complaint lacks any specific factual allegations as to these supervisory defendants. Additionally, to the extent Plaintiff is asserting supervisory liability as to Defendant Deaton, Plaintiff makes no specific

9

allegations as to this defendant except to mention Plaintiff's assignment to a top bunk by Defendant Deaton. (*Id.* at 5, ¶ 4.) Such conclusory allegations are insufficient to state a constitutional violation. *White v. White*, 886 F. 2d 721, 723 (4th Cir. 1989). As discussed above, Plaintiff has failed to state a deliberate indifference claim against Defendant Hassan, and he makes no factual allegations to support "tacit authorization" on the part of any of the DOC Defendants. Based upon the foregoing, Plaintiff has failed to state a supervisory liability claim against any of the DOC Defendants.

### 3. Qualified Immunity

The DOC Defendants also assert that they are entitled to the protections of qualified immunity. Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, the traditional two-step qualified immunity inquiry requires a court to determine: (1) whether the official violated a constitutional right; and if so, (2) whether the right was "clearly established" at the time of its violation. *See, e.g., Rock for Life-UMBC v. Hrabowski*, 411 Fed. App'x 541, 546-47 (4th Cir. 2010). In evaluating qualified immunity, a court initially may determine whether the plaintiff has alleged or shown a violation of a constitutional right at all. *See Pearson v. Callahan*, 555 U.S. 223 (2009).[2] Further, "[b]ecause qualified immunity is designed to shield officers not only from liability but from the burdens

---

[2] In *Pearson*, the Supreme Court overruled the mandatory two-step sequence adopted in *Saucier v. Katz*, 533 U.S. 194 (2001) in analyzing qualified immunity. Thus, after *Pearson*, courts are free "to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances . . . ." 555 U.S. at 236.

10

of litigation, its establishment at the pleading or summary judgment stage has been specifically encouraged." *Pritchett v. Alford*, 973 F.2d 301, 313 (4th Cir. 1992).

Having found that Plaintiff has not stated a claim for a constitutional violation, this court finds that the DOC Defendants are entitled to qualified immunity. *See Abney v. Coe*, 493 F. 3d 412, 415 (4th Cir. 2007) ("If [an officer] did not violate any right, he is hardly in need of any immunity and the analysis ends right then and there.").

## III. CONCLUSION

For all these reasons, **IT IS RECOMMENDED** that the court **GRANT** the DOC Defendants' Motion to dismiss (Docket Entry 14) and **GRANT** Defendant Hassan's Motion to Dismiss (Docket Entry 17).

Joe L. Webster
United States Magistrate Judge

Durham, North Carolina
July 31st, 2013

11